Samuel Nunez, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs May 4, 1984, to Judges DOYLE, COLINS and PALLADINO, sitting as a panel of three.

*David A. Scholl,* for petitioner.

*Michael D. Alsher,* Associate Counsel, with him, *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, August 29, 1984:

Samuel Nunez (Claimant) appeals here from an order of the Unemployment Compensation Board of Review (Board) which affirmed a decision of a referee denying benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

The Board found the following facts. Claimant was employed as a jitney driver for more than three years, during which employment, the Employer's policy required an employee to report an anticipated ab-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). This section provides that an employee is ineligible for unemployment compensation benefits for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work."

sence prior to the start of his shift. The Board found that this policy was to afford the Employer enough time to find a replacement worker without adversely affecting production. Enforcement was by a progressive discipline procedure under which an employee could be terminated after four violations within a six-month period. In evaluating a violation, the Employer would take into consideration the reason for an employee's non-compliance. Moreover, if an employee presented documentation that an anticipated absence would extend beyond one day, that employee was relieved of giving notice on a daily basis. This unwritten policy, although not part of the Employer's labor management agreement as were the policies concerning absenteeism and tardiness, was nonetheless known to all employees, including Claimant.

Claimant, who worked the 11:00 P.M. to 7:00 A.M. shift, was terminated after failing to report off prior to the start of his shift on four occasions in July and August, 1982. On July 9, Claimant failed to report his absence prior to the start of his shift because he overslept. He was issued a verbal warning for this violation. On July 29, Claimant failed to call in an anticipated absence until 11:02 P.M., claiming that prior to the start of his shift the telephone lines were busy.

Claimant failed to report his absence on August 4, claiming that he was incarcerated and allowed only one phone call which he used to contact his attorney.[2] Claimant's final infraction occurred on August 5 when he failed to call the Employer to report his anticipated absence for an alleged ankle injury. However, Claimant did not provide the Employer with documentation

---

[2] The Employer's witness testified that pursuant to the discipline procedure, Claimant would have received a three-day suspension after this violation had the fourth violation not occurred on the next day.

of his injury as was required by the Employer's policy. The Board denied benefits, finding Claimant guilty of willful misconduct.

The failure to report an absence in the manner required by an employer's policy, particularly after receiving a prior warning, constitutes willful misconduct. *Gochenauer v. Unemployment Compensation Board of Review*, 59 Pa. Commonwealth Ct. 354, 429 A.2d 1246 (1981). A violation of an employer's policy is not willful misconduct if the evidence shows that the claimant's action was justifiable and reasonable under the circumstances, and thus was taken with good cause. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976). The burden of proving good cause is, of course, the claimant's. *Gochenauer.*

Claimant contends (1) that the Employer's labor-management agreement provides that an employee must commit six violations of the reporting off policy within a six-month period before he may be terminated; (2) that the fact that the Employer's lines were busy just prior to the start of his shift constituted good cause for his failing to report off on time on July 29; (3) that his incarceration constituted good cause for not reporting off on August 4; and (4) that he was excused from reporting off on August 5 because he had previously informed the Employer of his ankle injury.

With respect to Claimant's first contention, the Board found that the Employer's unwritten policy on reporting off was separate and apart from the provisions of the labor agreement dealing with absenteeism and tardiness. The Board relied on the testimony of the Employer's general supervisor who testified that because of the need to find replacement workers, the decision had been made to treat a failure to report off prior to the start of one's shift more severely than an

unjustified absence. This witness further testified that all employees, including Claimant, were aware of this distinction. Claimant, on the other hand, testified that he was unaware of this policy and relied on the provisions of the labor agreement dealing with unjustified absences. Questions of credibility, resolution of conflicts in evidence presented, and the weight to be given evidence are matters for the Board to resolve. *McDermott v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 393, 431 A.2d 1140 (1981). The Board, in the exercise of its discretion, found the testimony of the Employer's witness to be more credible than that of Claimant. We have no basis for disturbing that determination.

As to the second contention, an employee is required to call in *prior* to the start of his shift. Claimant did not call until after his shift started, claiming that he tried a few minutes before 11:00 P.M. but that he was unable to get through because the telephone lines were busy. Considering the importance to the Employer of having its employees report off timely and the fact that Claimant had previously been given a warning for failing to do so, we do not believe that Claimant's waiting until the last minute and finding the lines busy constituted good cause for violating the Employer's rule.

With respect to the third contention, while incarceration may constitute good cause for an absence, we do not believe it constitutes good cause for failing to contact an employer. *See Robinson v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 275, 431 A.2d 378 (1981). Claimant certainly could have requested that his attorney notify the Employer of his anticipated absence from work.

Finally, the Board properly found that Claimant had not been relieved of his obligation to report off on August 5, because as of that date, he had not complied

with the Employer's rule requiring documentation of his alleged injury.

Accordingly, the order of the Board denying benefits to Claimant, Samuel Nunez, is affirmed.

ORDER

AND Now, August 29, 1984, the decision and order of the Unemployment Compensation Board of Review, No. B-216314, dated March 28, 1983, is affirmed.