505 A.2d 1375

Michael Duane Richner, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 14, 1985, before Judges Mac-Phail and Doyle, and Senior Judge Barbieri, sitting as a panel of three.

*James P. Johnson,* for petitioner.

*John W. English, Jr.,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE DOYLE, March 14, 1986:

This is an appeal from an order of the Unemployment Compensation Board of Review (Board) which reversed a decision of the referee and denied benefits to Michael Richner (Claimant) on the basis of willful misconduct.[1]

Claimant worked as a bartender for Omar Investment Company (Employer) for one year and four months until his termination on November 7, 1983. Claimant's duties included wrapping quarters from a poker machine which had been installed in the barroom sometime after he began his employment. Claimant was dismissed for twice refusing direct orders to wrap these quarters. Subsequent to the first refusal, Employer inquired of Claimant whether

---

[1] Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

he had a reason for refusing, and Claimant indicated his belief that by handling the quarters he would be participating in an illegal gambling activity.

Claimant was denied unemployment compensation benefits by the Office of Employment Security (OES). He appealed from the OES determination and a referee reversed the decision and granted benefits. Employer appealed the referee's decision to the Board which reversed the referee.

On appeal to this Court, Claimant argues that his refusal to wrap the quarters did not constitute willful misconduct. More specifically, he contends that the poker machine was an illegal gambling device, and that he therefore had good cause for refusing orders which would have required him to have contact with such a device.

Whether an employee's actions constitute willful misconduct is a question of law and is subject to our review.[2] *Eisenhauer v. Unemployment Compensation Board of Review,* 78 Pa. Commonwealth Ct. 341, 467 A.2d 650 (1983). A violation of an employer's policy is not willful misconduct if Claimant's action was justifiable and reasonable under the circumstances, but Claimant has the burden of showing good cause for such violation. *Nunez v. Unemployment Compensation Board of Review,* 84 Pa. Commonwealth Ct. 620, 480 A.2d 379 (1984).

In the present case, neither the referee nor the Board made a determination of the legality or illegality of the Employer's activities. The Board first determined that Claimant had been discharged for re-

---

[2] Where, as here, the party with the burden of proof has prevailed before the Board, our scope of review is limited to determining whether an error of law was committed or necessary findings of fact are supported by substantial evidence. *Negron v. Unemployment Compensation Board of Review,* 85 Pa. Commonwealth Ct. 137, 481 A.2d 699 (1984).

fusing to perform a duty which he had regularly performed in the past, and that Employer had consequently met his burden of establishing willful misconduct. The Board then made the following statement:

> While a good faith refusal to perform acts which are illegal or which could be construed as participation in illegal activity are grounds to avoid a willful misconduct discharge, the claimant's activity of wrapping money could not reasonably be construed as illegal conduct or participation in illegal conduct.

We agree with the Board's statement of the law, but we disagree with the conclusion that Claimant's actions were not reasonable.

Claimant testified that he had originally gone along with the use of the machine, but had reconsidered his conduct after Employer had informed the bartenders that any fines levied against the bar for illegal activity would come out of the pay of the individual involved. It is not clear from the testimony whether Claimant was initially unaware that the use of the machine might be illegal, or whether he was aware all along and merely changed his conduct to avoid a financial risk. It is worth pointing out that there was quite a bit of controversy in the law on the subject of poker machines during 1983, so confusion regarding legality would hardly be surprising. *See Commonwealth v. Two Electronic Poker Game Machines,* 502 Pa. 186, 465 A.2d 973 (1983), and the cases discussed therein. Whatever Claimant's thinking was, however, we do not believe that going along with a policy temporarily should preclude an employee from thinking better of his actions at a later date and changing his behavior accordingly, as long as he apprises his employer of his reasoning. According to the facts found by the Board in this case, Claimant

did inform Employer of the reason for his change in conduct.

Claimant further testified that he had been instructed to make cash payoffs in exchange for free games on the machine, and that, according to his interpretation of Pennsylvania's gambling laws, such payoffs constituted illegal activity. He stated that during the last month of his employment, plastic chips were given to customers in place of quarters during business hours "in case somebody was watching . . . [like] a Liquor Control Board agent or state police officer." He stated that the customers could exchange the chips for quarters at a later time. Finally, he indicated his belief that *any* contact with the machine, or with the money used to make payoffs, would constitute illegal conduct, and he stated that he refused to make payoffs as well as to wrap quarters.

Employer refuted none of Claimant's testimony regarding the use of the machine. On the contrary, he readily agreed with it. We note that the description of the payoff activity given in the testimony makes it fairly clear that it was illegal under the analysis of *Two Electronic Poker Game Machines*. Whether Claimant's own contact with the money would be illegal is a more complicated question. The Pennsylvania Crimes Code provides as follows:

(a) Offense defined.—A person is guilty of a misdemeanor of the first degree if he:

(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;

(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

(3)　solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or

(4)　being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.

18 Pa. C. S. §5513.

We need not, however, make any interpretations of the criminal law to decide this case. As indicated above, we agree with the Board's statement of the law that a reasonable belief in the illegality of an activity is sufficient to support a conclusion of just cause. *See Zinman v. Unemployment Compensation Board of Review,* 8 Pa. Commonwealth Ct. 649, 305 A.2d 380 (1973). In *Zinman* an employee quit her job rather than participate in the surreptitious recording of telephone conversations. The Court pointed out that Claimant's participation would *not* have been illegal, but stated that the practice was "at best highly questionable and the avoidance of association with an enterprise so engaged seems to us to have been the path of prudence." *Id*. at 651, 305 A.2d at 381. Having reviewed the applicable case law and statute, we conclude that Claimant's belief was similarly reasonable. The poker machine was a game of chance involving payoffs, the legality of which would appear to anyone with reasonable common sense to be highly questionable at best. Claimant's behavior was even less reprehensible than that of the claimant in *Zinman*. He did not quit, but merely refused to have anything to do with the poker operation.

Since Claimant's belief was reasonable, he has shown good cause and, therefore, his refusal to wrap the quarters from this poker machine does not constitute willful misconduct.

We will reverse the Board.

578

Now, March 14, 1986 the Order of the Unemployment Compensation Board of Review, No. B-228013, dated February 29, 1984, is hereby reversed.