# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wendy Hixen,                  :
              Petitioner       :
                              :
         v.                    : No. 529 C.D. 2016
                              : Submitted: November 4, 2016
Unemployment Compensation    :
Board of Review,                :
              Respondent     :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI               FILED: December 1, 2016

        Wendy Hixen (Claimant) petitions, *pro se*, for review of an order of the Unemployment Compensation (UC) Board of Review (Board) finding her ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] because she voluntarily quit her employment with Teletech Service

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b). Under Section 402(b) of the Law, an individual is not eligible for unemployment compensation benefits if his or her unemployment is due to "voluntarily leaving work without cause of a necessitous and compelling nature…." 43 P.S. § 802(b). "Necessitous and compelling cause" occurs under circumstances where there is a real and substantial pressure to terminate one's employment that would compel a reasonable person to do so. *See Smithley v. Unemployment Compensation Board of Review*, 8 A.3d 1027, 1030 (Pa. Cmwlth. 2010). A claimant in an unemployment case bears the burden of proving necessitous and compelling reasons for quitting. *Petrill v. Unemployment Compensation Board of Review*, 883 A.2d 714,

**(Footnote continued on next page…)**

Corporation (Employer) without cause of a necessitous and compelling nature. We affirm.

## I.

From September 24, 1998, through November 23, 2015, Claimant was employed by Employer as a Quality Specialist and was responsible for monitoring recorded calls so as to ensure compliance with Employer's specified guidelines. On November 24, 2015, Claimant filed for UC benefits stating that she voluntarily quit her job because of a "[h]ostile work environment/stress," further explaining, in pertinent part:

> I recently requested to have 3 days of personal time off in which I currently have 140 hours of [paid time off] time accumulated. I was told by [my manager, Toni Harp-Hartzell, that] I could not have the time off [because] I have not reached my numbers for the month, [and] I responded [that] . . . I understood and I would be at work . . . . She then scheduled a meeting via . . . telephone, telling me I was not a top performer [and that] everyone had to be held accountable for not reaching [their] goal. I repeated I understood [and] I would be at work. While still having the [telephone conversation], she then told our service delivery manager[,] Terri Frost[, that] she wanted her to watch me during those 3 days to make sure I was not saying anything verbally against the company policies or showing a negative attitude. I then told

---

**(continued…)**

716 (Pa. Cmwlth. 2005). The claimant must prove that he or she acted with ordinary common sense in quitting and made a reasonable, good faith effort to preserve the employment relationship. *PECO Energy Co. v. Unemployment Compensation Board of Review*, 682 A.2d 58, 61 (Pa. Cmwlth. 1996).

[Harp-Hartzell that] I was offended with that comment[,] that I was not a child [and] did not appreciate being talked down to [and] being treated that way. I then told her she did not have to worry about me [and] walked out of the [telephone] meeting giving my work badge to the service delivery manager[,] Terri Frost.

(Record (R.) Item 2, Internet Initial Claims, 11/24/2015.) Employer, in response, asserted that it did not know why Claimant voluntarily quit her job and indicated that continuing work was available for Claimant had she not voluntarily quit.

On December 8, 2015, the Indiana UC Service Center (Service Center) denied Claimant benefits because she failed to exhaust all alternatives[2] prior to voluntarily quitting her job as required by Section 402(b) of the Law, 43 P.S. § 802(b). Claimant appealed and a hearing was scheduled before an Unemployment Compensation Referee (Referee). Shortly thereafter, Employer "requested a telephone hearing as the employer is not available in person. . . . The witness will be Toni Harp-Hartzell and she is located in Missouri." (R. at Item 8, Employer Request for Telephone Hearing, 12/28/2015.) The Referee granted

---

[2] When a claimant voluntarily terminates his or her employment, he or she is ineligible for benefits unless he or she left the employment for a necessitous and compelling cause. *Nolan v. Unemployment Compensation Board of Review*, 797 A.2d 1042, 1046 (Pa. Cmwlth. 2002). A claimant has failed to meet the burden of demonstrating a necessitous and compelling cause where he or she has failed to take all necessary and reasonable steps to preserve the employment relationship, and a claim for benefits upon the voluntary termination of that employment must be rejected. *Id.* at 1046-47.

3

Employer's request and then notified Claimant of his decision. Neither Claimant nor her attorney[3] objected to Employer's Request for Telephone Hearing.

At the hearing before the Referee, Claimant testified that Toni Harp-Hartzell (Supervisor) was her intermittent supervisor for several years, but that she never communicated with her in person. While Claimant admitted that the two of them "got along" mostly, she did indicate that they "disagree[d] on some issues" and that there were "instances of friction" between them. (R. Item 10, Referee's Hearing: Transcript of Testimony, 1/11/2016 at 6.) Claimant stated that in early November 2015, she requested paid time off for the day before and the two days following Thanksgiving because she wanted to be with her family and because she was approaching the maximum amount of paid time off that she was permitted to accrue. The Supervisor, however, denied this request because Claimant was substantially behind on her required work for the month. Although Claimant said she understood and agreed to work on the days surrounding the holiday, the Supervisor scheduled a telephone meeting with her to further discuss the matter.

On November 23, 2015, a telephone meeting was held between the Supervisor, Claimant and another manager that was physically present with Claimant. At the outset of the telephone meeting, the Supervisor explained the reasons for denying Claimant's request and assured her that there were several pay

---

[3] At the hearing before the Referee, it was acknowledged by Claimant's counsel that they each received notice that the Referee granted Employer's Request for Telephone Hearing. (R. Item 10, Referee's Hearing: Transcript of Testimony, 1/11/2016.) Claimant is no longer represented by previous counsel and petitions, *pro se*, for review.

periods remaining before she could no longer accrue paid time off. However, after some discussion, the Supervisor eventually permitted Claimant to take the requested paid time off to be with her family, which Claimant declined. Claimant stated that the Supervisor then instructed the other manager to monitor her to ensure that she did not damage or steal any of Employer's property. Claimant responded that she was offended by the instruction and told the Supervisor that she "didn't have to worry about me." *Id.* at 9. She then placed her employee badge on the table and walked out of the room. Security escorted her out of the building.

When asked why Claimant decided to voluntarily quit, she explained:

> It was [the Supervisor's] tone and how she talked to me, the way she said take time with your family and then after she told [the other manager] to watch me, I was offended with that comment. . . . I was really offended and taken back by that conversation. It was – I didn't understand why we had a meeting after I had clearly told her in an email that I understood there was no problem, I would be there.

(R. Item 10, Referee's Hearing: Transcript of Testimony, 1/11/2016 at 10.) Claimant admitted that she did not take any steps toward remedying the situation or keeping her employment prior to handing in her badge.

Employer then presented the testimony of the Supervisor. Notably, during the beginning portions of the Supervisor's testimony, the Referee inquired whether she was using notes or mechanisms that were providing her information not contained in the record. After admitting that she was making reference to an

5

email chain, the Referee instructed her to "close it up and do not make reference to it." *Id.* at 16.

After complying with the Referee's instruction, the Supervisor went on to deny telling any manager to monitor Claimant prior to the moment that she turned in her badge and quit. When asked about her tone toward Claimant, the Supervisor also explained that she had "a very firm tone [throughout the meeting] and I had a . . . no nonsense attitude." *Id.* at 17. She stated that continued work would have been available for Claimant had she not voluntarily quit.

After the Supervisor provided her testimony, the Referee then inquired into "background noise like bings or whatever," which she explained was coming from her Cisco Softphone and resulted "because I'm dialed in over the Internet, you're hearing the pings of mail or the system stating live, that's all that you're hearing." (R. Item 10, Referee's Hearing: Transcript of Testimony, 1/11/2016 at 18.) The Referee accepted the Supervisor's explanation and no objections were made by Claimant.

The Referee denied Claimant UC benefits because she voluntarily quit her job without a necessitous and compelling reason as required by Section 402(b) of the Law, 43 P.S. § 802(b). Claimant appealed and the Board affirmed finding, in pertinent part, that she voluntarily quit her job because she did not like the Supervisor's tone of voice when she was informed that she could take paid time off for the Thanksgiving holiday period. Moreover,

[t]he Board notes the conflicts in testimony and credits the [S]upervisor's testimony that she did not ask the other manager to watch the [C]laimant and escort her out until after the [C]laimant had verbally quit and turned in her employee badge. There is no reason for the supervisor to have said that prior to the [C]laimant's quit.

(R. Item 13, Board's Decision/Order, 3/1/2016 at 2.) Claimant then filed this petition for review.

## II.

On appeal,[4] Claimant contends that the Board erred when accepting the Supervisor's testimony because she provided her testimony by telephone and admitted to relying on documents that were not entered into the record. The Board's telephone hearing regulation provides, in pertinent part:

> (a) The tribunal may schedule, on its own motion, testimony by telephone of a party or witness when it appears from the record that the party or witness is located at least 50 miles from the location at which the tribunal will conduct the hearing, without regard to State boundaries.
>
> * * *
>
> (d) The tribunal will promptly rule on a request that testimony be taken by telephone after a reasonable attempt has been made to inform the parties of the request, the basis for the request, the regulations under

---

[4] Our review of the Board's decision is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 222 n.8 (Pa. Cmwlth. 2012).

which telephone testimony can be taken, and the right of a party to object. The basis for the request, the position of the parties, if known, and the ruling will be documented on the record.

34 Pa. Code §§ 101.128(a), (d). The Board's regulations also provide:

(h) A document not provided as required by § 101.130(e) (relating to notice of testimony by telephone and use of documents) may not be admitted nor testimony given or taken from it unless consent has been requested from and given by all parties. Testimony taken or given in violation of this subsection will be excluded from consideration, as will the document.

34 Pa. Code § 101.131(h).

Contrary to Claimant's assertion, the Board did not err when accepting and crediting the Supervisor's telephone testimony because Claimant received notice of Employer's Request for Telephone Hearing, and without objection, permitted the Supervisor to testify by telephone at the hearing because she was located in Missouri. While the Supervisor may have initially referred to documents that were not part of the record, the Referee directed her to discontinue using any documents before her, and both the Referee and the Board accepted her testimony as credible. We will not disturb that determination on appeal. As we have explained, "Matters of credibility and evidentiary weight are within the province of the Board." *BK Foods v. Unemployment Compensation Board of Review*, 547 A.2d 873, 875 (Pa. Cmwlth. 1988) (citing *McGuill v. Unemployment Compensation Board of Review*, 523 A.2d 1194, 1196 (Pa. Cmwlth. 1987)).

8

Accordingly, the order of the Board is affirmed.[5]

_____
DAN PELLEGRINI, Senior Judge

_____

[5] Claimant also contends that the Board erred when determining that she voluntarily quit her job without cause of a necessitous and compelling nature because the Supervisor's testimony is incredible, and substantial evidence does not support the Board's finding that Claimant quit her job because of the Supervisor's tone of voice alone. The Board, in turn, contends that all other issues are waived pursuant to Pennsylvania Rule of Appellate Procedure 2116(a), which provides, in pertinent part:

> (a) General rule. The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. **No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby**. . . .

Pa. R.A.P. 2116(a) (emphasis added). We agree with the Board that Claimant waived all other issues because she failed to assert them in the Statement of Questions Involved in her brief and failed to provide anything more than bare-bone accusations of impropriety by the Board. As we have explained, Rule 2116(a) is mandatory, even where the party has not had the benefit of an attorney's assistance and is acting *pro se*. *See Dalesandro v. Unemployment Compensation Board of Review*, 625 A.2d 1291, 1291 (Pa. Cmwlth. 1993) ("The fatal flaw in [Claimant's] brief is that she has not supplied any statement of the questions involved on appeal."); *Daly v. Unemployment Compensation Board of Review*, 631 A.2d 720, 721 (Pa. Cmwlth. 1993) ("This rule applies to all briefs, regardless of whether they are written by an attorney or by a party in his or her own behalf.").

In any event, the Board did not err when it determined that Claimant voluntarily quit her job without cause of a necessitous and compelling nature. Claimant testified that she voluntarily quit because of the Supervisor's tone of voice, and the Board accepted the Supervisor's credible testimony that she did not instruct another manager to chaperone Claimant prior to her quitting. As such, substantial evidence supports the Board's determination that Claimant voluntarily quit because of the Supervisor's tone of voice alone and the Board's denial of Claimant's UC benefits pursuant to Section 402(b) of the Law, 43 P.S. § 802(b), because she failed to act with ordinary common sense in quitting and failed to make a reasonable effort to preserve the employment relationship. *See PECO Energy Co. v. Unemployment Compensation Board of Review*, 682 A.2d 58 (Pa. Cmwlth. 1996).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wendy Hixen,  
          Petitioner              :  
                                 :  
          v.                   : No. 529 C.D. 2016  
                                 :  
Unemployment Compensation   :  
Board of Review,                :  
          Respondent        :

# **O R D E R**

AND NOW, this 1st day of  December, 2016, it is hereby ordered that the order of the Unemployment Compensation Board of Review dated March 1, 2016, is affirmed.

_____  
DAN PELLEGRINI, Senior Judge